Argued February 13, decided February 20, 1912.

## GRAHAM v. SHAY.

[121 Pac. 413.]

FRAUD—FALSE REPRESENTATIONS.

1. Where a broker made representations as to the amount of timber upon land which he was attempting to sell, which were willfully false or recklessly made in disregard of the truth, the purchaser might recover for the false representations, though the time allowed the purchaser in which to discover or ascertain the falsity of the representations and seek a rescission of the contract by a guaranty given by the broker had expired, for the guaranty only affirmed the representations, and did not destroy the right of action thereon.

FRAUD—FALSE REPRESENTATIONS.

2. In an action against a broker for false representations made in the sale of land, evidence held˙ to support a finding of false representations.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by J. P. Graham against C. C. Shay, to cancel a contract for the sale of land and to require defendant to return $1,600 purchase money paid him on the contract.

The complaint alleges, in substance, that about January 20, 1907, defendant represented to plaintiff that he was the agent of Edward F. Bertroche, who had a timber claim for sale for $1,600, and that the land on which the timber was located was of such a nature that it could be easily logged, and that there was between 5,000,000 and 6,000,000 feet of timber thereon. Believing and relying on the representations of defendant, plaintiff purchased the land, and received a deed therefor signed by Edward F. Bertroche and wife. Plaintiff believes and charges the fact to be that at the time he purchased the timber land defendant was the owner thereof; he having purchased it from Bertroche for $1,200, and had the deed made directly to plaintiff; that the land is mountainous, rocky and inaccessible, and is of no value; that

plaintiff purchased it only for the timber; that in July, 1909, plaintiff discovered, and charges the fact to be, that the representations of defendant were false and untrue, and made for the purpose of deceiving plaintiff and inducing him to buy the land, or were made with a careless disregard as to whether they were true or false; that the land does not contain 5,000,000 or 6,000,000 feet of timber nor any other amount; that, owing to the misrepresentations of defendant, plaintiff paid to him the sum of $1,600, without any consideration therefor, which amount he still retains; that prior to the commencement of this action plaintiff executed two deeds, one to Bertroche and wife and one to defendant, and tendered them to defendant, for him to choose which one he would accept on payment to plaintiff of $1,600; that defendant refused to accept the deeds or to return the money.

Defendant answered, admitting that he represented that the Bertroche claim could be purchased for $1,600, and that plaintiff so purchased and received a deed from Bertroche and wife. He denied that he was at the time the owner of the land or had purchased it from Bertroche, and denied the alleged false representations and any knowledge or information sufficient to form a belief as to the character of the land. The answer further alleged that, at the time plaintiff negotiated the purchase, defendant had no personal knowledge of its character, and was ignorant thereof except from information derived from the owners, and so stated to plaintiff, and that, based upon such information and belief in its truth, he represented and guaranteed to plaintiff, subject to the conditions and limitations set forth in the answer, that the land was what was known as "a fairly good logging proposition," and that there was from five to six million feet of good timber thereon; but as to whether the representations were in fact untrue, defendant has

no knowledge nor information sufficient to form a belief and therefore denies the same.

Defendant, for a further answer, alleges: That on January 20, 1907, Bertroche and wife were the owners of the land in controversy, and that about that date he negotiated a sale from them to plaintiff for $1,600, of which sum defendant received $400 for his services, the remainder being paid to Bertroche. That during the negotiations defendant fairly and fully disclosed to plaintiff that he had never seen the land. That he knew nothing more about it than did plaintiff and that his representations in respect to it were based solely upon information derived from the owners. Thereupon, with full knowledge of defendant's source of information, plaintiff and defendant entered into a written contract of guaranty, which was as follows:

"This agreement, this day made and entered into by and between J. P. Graham, party of the first part, and C. C. Shay, party of the second part, witnesseth: Whereas, the said J. P. Graham is about to purchase for the sum of sixteen hundred ($1,600) dollars from Edward H. Bertroche and wife, the owners thereof, all of the following timber land, to-wit: The E. ½ of the S. W. ¼ of Sec. 6, T. 7 S., R. 4 E., W. M., in Clackamas County, State of Oregon; and whereas, the said C. C. Shay has represented and guaranteed that said land is, what is known as 'a fairly good logging proposition' so far as the general character of the land is concerned, and that there is upon said land from five to six million feet of good timber, which said representations of the said C. C. Shay constitute the inducement for the purchase of said timber land by the said J. P. Graham: Now, therefore, in consideration of the premises, it is hereby stipulated and agreed by and between the respective parties hereto that if, within six (6) months from date hereof, it shall be found that said timber land is not 'a fairly good logging proposition' so far as the general character of the land is concerned (without reference to location), or if said land does not contain thereon from five to six million feet of good timber,

as guaranteed and represented by said C. C. Shay, he, the said C. C. Shay, will purchase said real property from the said J. P. Graham, and pay therefor the sum of sixteen hundred ($1,600.00) dollars with interest thereon at rate of seven per cent (7%) per annum from date hereof. Provided, however, and this agreement is upon condition that the said J. P. Graham shall take all the necessary and proper steps to ascertain and determine whether or not said lands substantially conforms with the representations so made by the said C. C. Shay, and shall, within six (6) months from date hereof, make a demand of the said C. C. Shay for the purchase by him of said land in accordance with this agreement, in case said land shall be found, upon due and proper investigation and examination, to be other than as represented by the said C. C. Shay; provided further, that the said J. P. Graham shall give the said C. C. Shay not less than thirty (30) days' written notice of his intention to make such demand for the purchase of said land by the said C. C. Shay; provided, also, that in the event of the said C. C. Shay purchasing said land in compliance with this agreement, he shall be allowed until the expiration of six (6) months from date thereof in which to pay the same. But in no event shall the said C. C. Shay be required to purchase said land unless demand therefor be made by the said J. P. Graham before the expiration of said six (6) months. Time is the essence of this contract. As security for the due and faithful performance of this contract on the part of the said C. C. Shay, it is understood and agreed that the said C. C. Shay and Delia I. Shay, his wife, have made a deed conveying to the said J. P. Graham all of lots eleven (1) and twelve (12) in block one (1) Mt. Tabor central tract, in Multnomah County, Oregon, which said deed is hereto attached and made a part of this agreement, it being understood that the real property described in said deed is subject to an unpaid mortgage thereon, upon which there was due and unpaid on January 1, 1909, a balance of fifteen hundred ($1,500.00) dollars, same being payable in installments of fifty ($50.00) dollars each month without interest. It is expressly agreed that this contract, together with said deed, shall be deposited in escrow with a bank in the city of Portland, Oregon, to

be designated by the respective parties hereto, and that, in case the said C. C. Shay shall fail or refuse to comply with the terms and conditions of this agreement on or before the expiration of six (6) months from and after the date hereof, then said deed shall be delivered to the said J. P. Graham, and thereupon the said J. P. Graham, the grantee named herein, shall be and become the absolute owner of all the property in said escrow deed, subject however, to the unpaid mortgage thereon, which shall thereafter be paid and satisfied by the said J. P. Graham as such owner. But, in the event that the said J. P. Graham shall fail or neglect to insist upon the due enforcement of this contract against the said C. C. Shay for a period of six (6) months from and after the date hereof, in such case, immediately upon the expiration of such period said escrow deed shall be promptly surrendered to the said C. C. Shay, and all his liability hereunder shall cease and be terminated. It is also agreed by the parties hereto that in case the said C. C. Shay shall purchase said timber land from the said J. P. Graham, in accordance with the terms and conditions of this agreement, the said J. P. Graham shall convey to the said C. C. Shay all of said timber land clear of all incumbrances. In witness whereof, we have hereunto set our hands and seals this 20th day of January, 1908."

That the representations therein contained are the same as those alleged in the complaint, and that they were made as herein set forth and not otherwise. That plaintiff wholly failed and neglected to ascertain within six months or for over 18 months whether the land conformed to the representations made by defendant, and failed and neglected to give defendant 30 days' notice or any notice of his intention to demand that he should purchase the land or to carry out any of the terms of the contract within the period of six months or at all, and that by reason of plaintiff's default defendant is released from the contract, and from any liability on account of any representations made by him to plaintiff in relation to the land.

There was a reply, admitting the execution of the contract of guaranty and repurchase, but otherwise taking issue with the allegations of the answer.

AFFIRMED.

For appellant there was a brief over the names of *Mr. A. E. Clark* and *Messrs. Booth & Richardson,* with an oral argument by *Mr. Clark.*

For respondent there was a brief over the names of *Messrs. Johnson & Stout,* with an oral argument by *Mr. George A. Johnson.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The representations as to the character of the land and the amount of timber thereon are admitted, and the fact that they were untrue is fully established by the evidence. If they were willfully false or made recklessly without any knowledge as to whether they were true or false, defendant cannot shield himself behind his guaranty, which would simply constitute a repetition of the falsehood.

2. The testimony will be examined, therefore, with a view of ascertaining the good or bad faith of defendant in making the representations which plaintiff claims were the cause of his making the purchase. Plaintiff's testimony is positive to the effect that defendant told him he had been over every foot of the land, and knew its character, and that it was as he represented it. Bertroche testifies that defendant told him that he knew all about that country; that he had been there a number of times; that he (witness) never represented to defendant that the land had 5,000,000 or 6,000,000 feet of timber on it; that he did not represent anything to defendant in regard to the timber, but that defendant did all the representing himself, said he knew all about it. Mrs. Bertroche testifies that she heard defendant tell her husband that he had been all over this land, and knew what it was like.

Defendant testifies that he told plaintiff that he had never been nearer than within six miles of the land, and that his estimate of its character was derived from other parties. Mr. Heilman, who occupied the room adjoining that of defendant, testified that he heard one conversation in which defendant stated to plaintiff that he had never been on the land, but that he had been to see a Mr. Slinger, who had informed him that there were undoubtedly 5,000,000 or 6,000,000 feet of timber on the claim. Mr. Pulfer, another witness, testified that he overheard a conversation between plaintiff and defendant to this effect: Graham said to defendant that he had been up there and had seen that land, and that there was no timber on it. Defendant asked, "What land?" and Graham said, "The land I bought from Bertroche."

Shay said:

"I didn't know what was on the land. I sold that land to you, and gave you six months' time to look at it, and you never have looked at it, and I am not to blame for it."

Graham said:

"I don't blame you, but somebody is responsible for selling me something that does not exist, and I want to find out where Mr. Bertroche lives."

Shay further remarked:

"I never saw the land. I sold it to you and gave you six months to go and look at the land."

And Graham said:

"I don't blame you for it, Mr. Shay."

Defendant did not produce as witnesses any of the persons from whom he claimed to have derived his information as to the character of the land or account for their absence. Colton, a timber cruiser, testified as to the character of the land, and from his testimony it appears that it is situated in an old burn; that it is rocky, precipitous, destitute of timber, and worthless for any purpose. It is clear that by reason of defendant's repre-

sentations as to its character plaintiff was induced to part with $1,600, and has received nothing in return. It is also clear that defendant negotiated the purchase in his own name, and paid for it with his own money, with the intention of disposing of it to plaintiff at an advanced price. The fact that he did not ask Bertroche for an estimate of the timber, and that he purchased for a much less sum than other persons in the vicinity were asking for their timber claims, are circumstances tending to show that he knew or had reason to believe that there was something wrong about the land, and his statement to Mr. and Mrs. Bertroche that he had been there and knew all about it, if true, tends to prove that his misrepresentations to plaintiff were deliberate. It is claimed by defendant that he told plaintiff that he had never seen the land and only knew its character by report from others, but this is denied by plaintiff, and, as before stated, this denial is strengthened by defendant's statement to Mr. and Mrs. Bertroche that he had been on the land and knew all about it, and by his failure to produce in court as witnesses the persons from whom he claimed that he had derived his information. The testimony is contradictory on this point, and, as we have not the opportunity enjoyed by the learned circuit judge of seeing the witnesses and observing their demeanor on the stand, we are inclined to adopt his view of the evidence, not only on that account, but because we are convinced from a perusal of it that it is more probable and consistent with what naturally would occur under the circumstances. It is true that Heilman's testimony as to one conversation tends in a measure to corroborate defendant's statement, but the witness was only a chance listener, and nearly two years had elapsed between the date of the alleged conversation and the hearing in court, and the facts detailed are denied by plaintiff who was putting his money into the property, and therefore

interested in noting and remembering just what statements were made. Besides this, such a representation would be contrary to the fact if defendant's statement to Bertroche and wife that he had been on the land and knew all about it was the truth, as it probably was. We are convinced that defendant made the statements attributed to him in the complaint and that he either knew they were false when made or that he made them recklessly, without caring whether they were true or false, and that they were made for the purpose of inducing and did induce plaintiff to buy the land. This being so, he ought, as a matter of good morals, as well as law, to be compelled to make good to plaintiff the loss which he has occasioned.

The decree is affirmed.                      AFFIRMED.